# *Ex Parte* Pittsburgh Life & Trust Co.

### *Assumpsit.*

(Decided July 25, 1914.   Rehearing denied November 7, 1914.
66 South. 489.)

*Insurance; Taxes; Licenses ; Computation.*—Under section 2089, Code 1907, as amended by Acts 1909, p. 337, and General Acts 1911, p. 163, section 4, the premiums upon which the taxes paid by a foreign corporation are to be computed, do not include premiums received at its home office outside the state on policies held by residents of the state, since the statutes are plain and unambiguous, and the courts must accept as the legislative intent that which the legislature has plainly stated, and refrain from efforts at construction or interpretation for which there is no room.

CERTIORARI to Court of Appeals.

The Pittsburgh Life & Trust Company sued Cyrus B. Brown, State Insurance Commissioner, for license tax paid upon certain premiums received from policy holders paid to the home office of the company, and recovered judgment.   The State Insurance Commissioner appealed to the Court of Appeals, where the judgment for plaintiff was reversed and the cause remanded.

(10 Ala. App. 614, 65 South. 699.) And plaintiff applies for writ of certiorari. Writ issued, the judgment of the Court of Appeals reversed, and the cause remanded to said court for further action.

A. G. & E. D. SMITH, and FRANK EWING, for appellant.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.

McCLELLAN, J.—This is an application for writ of certiorari to the Court of Appeals, to review its judgment reversing the judgment of the city court of Montgomery, where, at the suit of the petitioner against the state insurance commissioner, recovery was allowed of taxes paid, under protest by the petitioner, to that officer. The petitioner is a corporation, chartered by the state of Pennsylvania, having its home office in Pittsburg, in that state.

As amended by the act approved August 31, 1909 (Acts Sp. Sess. 1909, p. 337) Code, § 2089, provides, among other things: "Every insurance company, domestice or foreign, doing business in this state, when filing statement as required by section 4556 of this Code shall at the same time pay to the insurance commissioner the following amounts, that is to say: Each fire insurance company shall pay one and one-half dollars on each one hundred dollars of the gross premiums, less return premiums, received by it in this state, and every other insurance company shall pay two dollars on each one hundred dollars of gross premiums, less return premiums, so received in this state during the year ending the thirty-first of December next preceding as a tax for doing business in this state.

[Ex Parte Pittsburgh Life & Trust Co.]

Section 4 of the Revenue Act approved March 31, 1911 (Gen. Acts 1911, p. 163), among other things, provides: "Every insurance company, except fraternal, doing business in this state, which files a statement as required by section 4556 of the Code, shall at the same time pay to the insurance commissioner the following amounts, that is to say: Each fire insurance company shall pay one and one-half dollars on each one hundred dollars of the gross premiums received, less the premiums returned by cancellation, by it in this state, and every other insurance company shall pay two dollars on each one hundred of the gross premiums so received in this state, during the year ending on the 31st. of December preceding, as a tax for doing business in this state."

Pretermitting others not necessary to be now considered, the question presented was, and now is, whether the basis of the per centum tax of $2 on the premiums received by the company includes premiums *received* outside of this state, viz., at the home office in Pittsburgh, even though the premiums thus received are on policies held by residents of the state of Alabama. The Court of Appeals replied in the affirmative, thereby justifiying the exaction of the payment of the tax sought to be recovered.

"Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature * * * should be intended to mean what they have plainly expressed, and consequently no room is left for construction. Possible or even probable meanings when one is plainly declared in the instrument [law] itself, the courts are not at liberty to search for elsewhere."—*State ex rel. v. McGough*, 118 Ala. 166, 24 South. 395.

To the like effect are these, among other, of our decisions: *Kelley v. Burke,* 132 Ala. 235, 243, 31 South. 512; *Ex parte Mayor, etc.,* 78 Ala. 423; *Lehman v. Robinson,* 59 Ala. 219, 238; *Carlisle v. Goodwin,* 68 Ala. 137, 139; *Reese v. State,* 73 Ala. 18, 19; *Bartlett & Waring v. Morris,* 9 Port. (Ala.) 266, 268. In *Lehman v. Robinson, supra,* this presently apt expression is quoted with approval: "It [legislative intent] must be such an intention as the Legislature have used fit words to express. Although the spirit of an instrument is to be regarded no less than its letter, yet the spirit is to be collected from the letter."

And in *Carlisle v. Godwin, supra,* it was written: "And it is a cardinal rule that, where the statute under consideration is unambiguous in its language and plain in its meaning, there is no room for construction or interpretation."

And in the early case of *Bartlett & Waring v. Morris, supra,* this was the pronouncement made: "No principle is more firmly established, or rests on more secure foundations, than the rule which declares, when a law is plain and unambiguous, * * * the Legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction."

The statutes under view plainly restrict the basis for the tax to premiums "received in this state." If the class or character of premiums (those *received* by the company *outside* this state) were held to fall within the statutes, the result would be to amend the statutes; for they have explicitly excluded that class or character of premiums by the use of the provision, "received in this state." If the lawmakers had omitted that explicit expression, and had made the basis of the calculation and tax premiums on business done in this

state, a question might then arise that would allow judicial consideration of the further inquiry whether the reception outside of Alabama of premiums on policies held in Alabama was the doing of business in Alabama within the statutes. This is not the status established by these statutes. They are plain and unambiguous in the respect under consideration. The courts cannot do otherwise than to accept as the legislative intent that which the Legislature has plainly stated was its intent, and refrain from the exercise of an effort at construction or interpretation, where, as here, there is no room for either. There is nothing in the statutes opposed to this acceptance of the meaning of the particular phrase mentioned; nothing that institutes an inharmony in that regard.

The Ohio court, in *Insurance Co. v. State*, 79 Ohio St. 305, 87 N. E. 259, where the same question was considered, reached the conclusion that the question before herein stated could, under the plain terms of the statute, only be answered in the negative. That court said: "Counsel for the state contend that the tax is not a tax on the premiums, but a tax on the privilege of doing business in the state, and that the premiums received by the company for business done in the state, whether received in the state or at its home office, indicate the amount of business done in the state, and constitute the basis for determining the amount of the tax. The General Assembly might have exacted a per centum of the value of the business done in the state as a tax for the privilege, and then it might be necessary to determine what is business done in the state, or it might have provided that the tax should be a per centum of the premiums received by the company from business done in the state, or it might have made the amount of the tax determinable on some other

basis; but it has not done so, but has expressly provided that the company shall pay 2½ per centum of the gross amount of premiums (less the specified deductions) *received by it in the state.* The fact, if it be a fact, that there is no apparent reason why the amount of premiums received *in* the State, rather than the amount of premiums received *from* the State, should be the basis of the amount of the tax, or the fact, if it be a fact, that the adoption of the former basis rather than the latter will afford an opportunity to evade the tax, does not empower the courts to change the statute. There is no ambiguity in the statute. * * * If the statute needs amendment, the remedy is with the General Assembly."

The judgment of the Court of Appeals is, in our opinion, laid in error. It therefore follows that the writ of certiorari is granted, and the judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals.

Writ granted. All the Justices concur.